We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Susan F. Hutchinson presiding. Your Honors, the only case on the docket this morning is 2-23-0235, in-ray parentage of KK, a minor, Robert Sean Kidwell, petitioner-appellant, the Brittany R. Bryant, respondent-appellee. Arguing on behalf of the appellant, Mr. Michael J. Chiro. Arguing on behalf of the appellee, Mr. James R. Buck. All right, good morning, gentlemen, and thank you for joining us this morning on Zoom. And Mr. Chiro, if you are ready, you may proceed. Thank you, Justice, I appreciate it. I did address in my brief on behalf of the petitioner-appellant the issue of jurisdiction. The court, after I filed my brief, asked for supplemental transcripts to be provided. Upon reading those supplemental transcripts, I believe I'm obligated to address jurisdiction again based on what I read in the transcript, as opposed to simply reiterating what I put in my There was an order entered on December, I'm sorry, October 20th of 2020, in that particular order, at the time when I referred to the court, at the time it was Judge Peterson. Judge Peterson entered an order on 10-20-20 that indicated that the petitioner-appellant's parenting time would be denied until further order of court. Upon reading the transcript from October 19th of 2020, which starts at sub 2R4 and ends at sub 2R34, I'd like to bring the court's attention to page sub 2R32 for purposes of jurisdictional argument. The underlying petition that was filed by the respondent-appellee, which was the petition to suspend parenting time filed on October 3rd of 2018, was originally granted on December 7th of 2018. That was by Judge Buick. Then Judge Peterson, on October 20th of 2020, entered another order indicating that the petitioner-appellant's parenting time would be suspended in further order of court. My issue on jurisdiction, as I'm obligated to bring to the court, is the following. Starting on line 4 of sub 2R32, Judge Peterson stated, okay, well, I've considered all of that. I'm finding that you did agree to the restriction of the parenting time, and I'm denying your motion for the parenting time until the reconciliation counseling occurs, so that can be put in the order. Then he went on to further state on lines 10 through 13 of sub 2R32, I guess you have further if you think there's a further basis or something I didn't consider. Once the order is entered, you can file a motion to reconsider, and we can have a hearing on that, I guess, but I'm denying your motion. The motion that Judge Peterson denied was the motion for hearing or in the alternative resumption of parenting time filed by the petitioner-appellant. The reason I raise this for jurisdiction before the court is as follows. They're assuming that the petition to suspend parenting filed on October 3rd of 2018 was a pleading requesting a final modification of the Judge Buick on December 7th of 2018 ruled on a temporary basis, and then I believe Judge Peterson entered the second order restricting the parenting time on 1020 of 20. I believe that on sub 2R32 lines 4 through 14, I believe Judge Peterson created an ambiguity as to whether or not his of 20 denying the petitioner-appellant's parenting time was a temporary order because he indicated I'm denying your motion for the parenting time until the reconciliation counseling occurs. That could be read to where it was a temporary order. If that was a temporary order and the petition to suspend parenting time was never finally resolved, then the petition to suspend parenting time filed on 10-3 of 18 would still be pending and therefore I do not believe this court would have jurisdiction despite my argument in my brief that the court does have jurisdiction. When Judge Peterson further stated on lines 10 through 14 of sub 2R32 that the trial counsel for the petitioner-appellant could file a motion to reconsider, my understanding is that a motion to reconsider under 735 ILCS 5-2-1203, you can only file a motion to reconsider if it is a final judgment. So from my perspective, that could be read two ways. Either the 10-2020 order was a final resolution of the petition to suspend parenting time filed on October 3rd of 18. That would give the court jurisdiction but when you read Judge Peterson's words that he is going to deny the motion until the reconciliation counseling occurs, that could be read as a temporary order which would defeat this court's jurisdiction. So I just wanted to address the issue of jurisdiction before I proceeded with the rest of my argument. All right and before you go to the rest of your argument, let me ask, we ordered those because one of your allegations in the brief was that there was no hearing held and no findings of fact pursuant to the statutory authority. If that was the case, why didn't you give us those briefs in the beginning or those transcripts in the beginning because it would have solved some of this problem? Of course, Rona, I apologize. I was not trial counsel and I just assumed that it was based on speaking to denied on October 20th of 2020. So I did not know that there was this extensive hearing and for that I apologize to the court. It did not cause any inconvenience. Again, one of your concerns in this case is a hearing pursuant to, was it, I can't remember the statutory authority now, but where certain findings of facts had to be made. Was that hearing or was a hearing of that type held at any time when custody or when visitation was being considered? No, Judge. So the distinction is my client received on October 20th of 2020 a hearing on his motion requesting a hearing on the petition to suspend parenting time and Judge Peterson denied his motion for a hearing indicating that he waived his right to a hearing on the petition to suspend parenting time. The of a hearing on the petitions to spend parenting time is the hearing that I argue my client never received. All right. All right. You may proceed. May I ask a question? Of course. Is there a case law or a statute I'm not aware of that says if it's temporary, the court doesn't need to find serious endangerment to restrict visitation or parenting time? Excuse me. The difference I believe, Your Honor, is because my client's visitation was suspended in the initial allocation judgment, a modification of that allocation judgment under 60310 does not require a finding of endangerment. Because it was initially suspended and the petition to suspend parenting time asked for further restriction from supervised to none whatsoever, I don't believe the court had to make a finding of a serious endangerment under 60310B because there was already an existing restriction. But I do believe that my client was entitled to a hearing under 6035A when it is if it would be a permanent modification. So I believe it was entitled to a hearing either way, but I do not believe the court was required to make a finding of serious endangerment because the initial judgment contained a restriction. Thank you, counsel. So my argument, twofold, I'd like to address the petition to suspend parenting time first if I may. That was that pleading and I'm taking it as a pleading filed by the respondent appellee on October 3rd of 2018. On December 7th of 2018, Judge Buick entered an order denying my client's parenting time and the transcript of that particular proceeding did not indicate that he was to receive that he received the hearing at all. And that's sub 2R35 to sub 2R45. And my client did not receive a hearing on a temporary basis on October 7th of 2018. My client filed a motion for C314 through C317. The respondent appellee filed a response to the motion for hearing or in the alternative resumption of parenting time, which starts at C324 and ends on C328. In that response filed by the respondent appellee on page C326, in responding to paragraph six of underlying motion, there was an affirmative matter pledged as subparagraph N that reads, throughout this period of time, the parties agreed that reunification counseling would have to occur before the resumption of Sean's parenting time with the minor child of the parties. Although no hearing was held regarding Sean's parenting time, there was an agreement and or understanding between the parties in the GAL that Sean's parenting time with Tyler would not resume until reunification counseling. So respondent appellee in her response admitted that my client was never granted a hearing on the petitions to spend his parenting time. Judge Peterson on October 20th of 2020 made a finding that the petitioner appellee waived his right to that hearing based on prior orders of court. And I don't believe he specifically referred to which specific orders other than he did mention the order entered on February 24 of 2020, which does not mention the issue of parenting time at all. It's simply in paragraph one states reconciliation counseling is temporarily placed on hold for up to one year and placed some conditions. So February 24 of 24 order does not mention parenting time at all. The only two orders mentioning parenting time are 12, seven of 18 and 10, 20 of 20. The 10, 20 of 2020 order is the order that I believe, depending on how the court reads, it was either a second temporary suspension of my client's parenting time, or it was a final resolution of the petition to suspend parenting time filed on October 3 of 2018. Okay, Mr. Chiro, I do have a question before we get into any more dates. There was an order entered December 7 of 2018 in the original petition that said that parenting time would be further suspended until December 17, 2018. Why didn't parenting time resume at that time if the order had expired? Well, I don't believe that. Well, I'm sorry. One moment. The December 17 order did not address parenting time at all. It just set the matter for status on the petition for reconciliation counseling. But the December 7 order said that it was the parenting time was suspended until December, I believe it was 17th. On December 17th, the only thing that that order says, as you're correct, is reconciliation counseling. So, why wasn't there a request at that time for parenting time to resume? I don't know why one was not filed at that particular time. So, I believe that that would a question as to what parenting time my client was entitled to receive between December 7 of 2018 and October 20 of 2020. So, I agree with your honor. I believe it's unclear based on the trial court's orders as to what parenting time my client had between December 7 of 18 and 10, 20 of 20. All right, this reconciliation counseling is also an issue. Megan, I believe it was Megan Schultz was supposed to be preparing the KK for the reconciliation counseling by working with her on a weekly basis pursuant to the order. Yet, there is notice in the file that she went to every other week and sometimes did three times of a month, but most of the time she did two times a month because KK didn't need it. I can't find an order that was entered allowing her to do that. Did that ever occur? I did not see in the file any order allowing the child to reduce the frequency of her individual therapy. And in the first order where she was to be preparing the child for reconciliation counseling, is there any language that you can find that isn't ambiguous saying that she could make a decision like that on her own? I did not see anything that would allow the child to make that decision. No, not the child, Megan Schultz, the counselor. Well, I don't recall that Megan Schultz was given that authority to unilaterally reduce the child's individual therapy. Okay, all right, you may proceed. I'm sorry. Thank you, Justice. So, my issue regarding the petition is to spend parenting time filed by respondent Appali. I don't believe my client received a hearing. My appeal of the court's denial of the motion for reconciliation counseling is based on the court's findings itself. My understanding, Justice, is that the court under 607.6A would only need to find one of four preconditions to consider whether or not to order family counseling for my client, the petitioner Appali, and the minor child. She did, I believe, this would be Judge Klein, properly make a finding under 607.6A4 that my client had violated the allocation judgment. Therefore, she could consider whether or not to grant family counseling. And I believe, since she made that finding under A4, she was certainly entitled to hear my client's request, and she denied it. The reason I appealed that particular ruling is because the court made findings in added language to the statute that, to me, evidences that the court may have not made. Because the court made a finding under four, I think the court was absolutely free to determine whether or not she felt the reconciliation counseling would serve the best interest of the child. And had she not made two findings under A2 and A3, I may not have appealed this particular ruling at all. Because if she had simply made a finding under 607.6A4 that my client violated the allocation judgment, reunification therapy was ordered twice, it didn't work. Had Judge Klein stopped there, I may not have appealed this particular ruling on the denial of the motion for reconciliation counseling. But Judge Klein, in her findings, said the court does not find that KK's physical health is endangered by not engaging in reconciliation counseling, which would be 607.682. And she found that the child's emotional development is, she could not find that the emotional development is impaired by not engaging in reconciliation counseling. Because the court added those findings, it demonstrates to me that the court may not have understood her burden in deciding whether or not to order the reconciliation counseling. And because the court's findings add language to the statute that does not exist, I believe the court, the trial court, needs to re-hear the motion and not read requirements into the statute that don't exist. So that is why I asked to appeal the ruling on the motion for reconciliation. Okay, Mr. Ciaro, I'm going to ask my colleagues if they have any other questions because your actual argument time has expired. Justice Jorgensen, do you have any questions? Justice Mullen? Not right now. All right, and I have none either. You will have time for rebuttal and we will, if you'd mute yourself and listen, we'll go to Mr. Buck. Thank you. Thank you. May it please the court, I'm Jim Buck. I represent Brittany Bryant, who is the defendant and the and so is my partner, Amanda Wilgus. She's actually helping me with the technology, which I don't know too well. And she has an interest in this case because she practices primarily family law, as I do. This morning, I intend to address three issues and then take questions from the court. The issues that I intend to address would be, did Judge Klein error in denying Sean Kidwell's petition for reconciliation or reunification counseling? Secondly, did Judge Buick's failure to hold a hearing on Brittany's petition to suspend parenting time constitute error? That was done on December 7 of 2018. And then our belief that Judge Peterson did hold a hearing on Sean's motion for a hearing or in the alternative to the order didn't get entered until the following day. And it admittedly was not a full evidentiary hearing, but I think the transcript shows that there was a lot of discussion between the judge, the attorneys involved and the guardian ad litem. Now with regard to the first issue, Sean's argument that Judge Klein should not have denied his motion for reconciliation. First, he bases his argument, I believe on the wrong statute. He seems to emphasize the argument is primarily on 603.10, which has to do with restricting parenting time, rather than 607.6, which addresses whether the court should order counseling. Now, I agree that or point out that both of those statutes have somewhat similar language and that they both talk about the child's physical health being endangered or her emotional development being impaired. But 603.10 basically deals with seeking to restrict parenting time and 607.6 seeks to determine whether reconciliation counseling or reunification counseling should be ordered. And that's what the hearing was on those three dates. All right, but Mr. Buick, I think his is that the judge added language to the 607 statutory authority that was not otherwise there and that either was ambiguous or was wrong as and therefore the the ruling was wrong. And that language I believe that was added was that she will, if she doesn't have counseling, reconciliation counseling, her physical health won't be endangered and her mental health won't be impaired by not receiving reconciliation counseling. And that's not what the statute says. It's supposed to be in the positive. Well, I don't know. I guess in my brief, my position was that the court could come at it from either angle, from a positive angle or a negative angle. She chose to do it at the negative angle. Well, the negative angle, if that's the choice, is going to 100 percent result in no reconciliation counseling. No. The purpose of the statute is to determine if it's healthy for the child, not if she won't be endangered by it. I mean, I think we have to take the statute as it's written. Well, I guess my argument is, is that it's possible to do it either way. And one of the cases cited by the defendant himself, Enri, the marriage of Gosel, was cited by Kidwell on page five of his memo in lieu of brief. And then it was also cited by myself on page twenty five of Brittany's brief says that legit legislative intent can be determined by construing the statute one way or the other. And I think the court had the right to do that. I mean, when she. But in what way was the statute ambiguous? Well, I don't know that I'm saying that it was necessarily ambiguous. I'm just saying that she had the right to do it either way. Your Honor, I don't think she changed the intent of the statute by saying, if I don't order it, what is going to happen? Will the child be harmed? Doesn't that significantly change the burden one to the standard, as Justice Hutchinson put it? The question is, is it healthy for the child? If there's been any of these four situations, then the court can do what is kind of unusual, maybe, which is order someone else to go to counseling. Well, the issue isn't will the absence of counseling destroy or ruin or endanger their standard? Well, I think it's kind of the opposite side of the coin. I mean, that's the way I looked at it. All right. I see. It seemed to me that the court and I cited a number of cases that stated that language can be added as long as the intent is not changed. Mr. Chiaro also brought up an argument that I guess I must admit I did not make in my brief. But if the judge finds just one of factors applies, then she has the right to decide whether there should be any counseling or not. And she found that one of those did apply. And then she ultimately decided that it should not apply. So even though she may have changed the language in point two of the factors that she should consider, she then found that Mr. Bryant, I'm sorry, Mr. Kidwell had violated the terms of order that his parenting time was to be restricted. And so she then went ahead and made a determination that there would not be reconciliation counseling. And she listed a whole bunch of reasons for that. The passage of right. You're right. She did list those reasons. Yes. There were a couple, at least a couple of professional opinions that it would not do any good. So I OK. So then I and Mr. Buck, let's talk about Megan Schultz again, which you may maybe weren't going to address. But I want to know if you have found any order in this case or any authority for Megan Schultz to change the court's position that this child should be seeing Megan Schultz on a weekly basis to prepare her for reconciliation counseling? Well, the the order for her to go every two weeks was done very early in the proceedings. It wasn't done at the time of the that the court when Judge Peterson was hearing the matter, it had been done sooner than that. And in the meantime, I had sent out I was to report every week or I'm sorry, every month as whether the reconciliation I'm sorry, the counseling between Megan Schultz and the child was taking place. When was that? When was that every two week order entered? I thought the only order entered was every week, every week. Well, I don't think there was an actual order, but there was a hearing on a rule to show cause that was filed by the plaintiff and that was heard and court denied it. And so because at that point in time, Megan Schultz had decided that was not necessary to meet every week. Plus, my client's daughter was involved and was trying to get involved in volleyball, which was what occur at the same time that Megan Schultz could meet with her. So there were a couple of reasons why we asked that that be changed. And that motion was denied. All right. But Mr. Buck, these parties were in court, it seems like forever, either continuing cases or filing new petitions. Why was there never a request by your client to suspend or to change or to do anything with that order about Megan Schultz seeing KK on a weekly basis? I guess I thought that if she was meeting with Megan Schultz regularly, that that was fulfilling the intent of the order. And then there was in fact a hearing on the rule to show cause and that was denied. So again, I thought that what was happening fulfilled the obligation of the child to have counseling. But that ruling on the petition for address how often the child necessarily was handled by Megan Schultz. It was why the mother didn't get her there on a regular basis. And so I'm still concerned about how Megan Schultz kind of took this case over, apparently without any sort of judicial oversight. So I guess my recollection of that motion for rule to show cause was that it wasn't only because my it was the fact that there was not a need for weekly parenting time. Now, maybe it was my error not to file a motion to get it changed. And I guess if that is the big issue today, then I will agree that I did not do that. You said there was not a need for weekly counseling. Yes, with Megan Schultz. I mean, there were other problems that had occurred. I mean, all of this was going on during COVID. So a lot of this was rather difficult to even do because of that situation. And they went to, I think, when I say they, the Family Service Counseling by phone. And then it was done, I think, then every two weeks. And so there were a lot of problems going on at that time that made it all very difficult. And should I have filed a motion and said, let's get it clear that it only has to be done twice a month? Probably, I guess, in retrospect, listening to what the court believes today, I should have done that. And I must admit, I did not. All right. May I ask, just the issue that is left, I guess, in my mind is the question of whether or not the father was entitled to a hearing on the restriction of his visitation. And counsel said, well, maybe it was a temporary order. And I understand these situations don't always fit neatly in a bucket. But temporary or not, first of all, the temporary order statute refers to temporary orders entered before the entry of a final allocation judgment. Having said that, I sat in divorce, so I understand there's sometimes exigencies. But it seems to me the gist of the story is that this father's visitation, and I can't tell from the record, so if it's in there and I overlooked it, I'm sorry. It wasn't just his visitation or parenting time that was ceased. It was any and all contact with the daughter. And it came out later, I guess, there was indication in the record that the child had made some sort of outcry concerning a possible alleged sexual abuse. But that was never determined. And so here we are, literally years later, and there's never been a hearing on that issue, which if established, I assume would constitute serious endangerment. But it was never established. It was never agreed to. So how is it we get around that? You know, counsel has said, well, he agreed to a restriction on his visitation in the final a serious endangerment finding. And people do come in, and in order to avoid a hearing or maybe deal with their issues or for the best interest of the family, they'll agree to a restriction. But then to have that, you know, every other week, supervised visitation just completely terminated for years. Well, meanwhile, he's asking for a hearing. What do we do with that? What's your justification for that? Did he have his hearing? Did he waive it? You know, you've said, well, we had a discussion and the GAL was there, but the statute contemplates a hearing and evidence to a preponderance. When a finding of serious endangerment, it looks to me like that never happened. Well, first of all, getting the information about what actually happened, we try and be difficult. Yes, but there isn't, to my eye, an exception in the statute, unless the parties find it too expensive or too inconvenient or too difficult to bring these issues to a hearing. Well, we tried, we sent out subpoenas to the Family Service Agency, because we believed that the child had revealed what happened to Megan Schultz. Then the Family Service Agency came in and objected to that subpoena. It was quashed because it was going to interrupt or destroy the rapport that had been developed between the child and Megan Schultz. Then the child became turned 12. At that point in time, when we tried to get it again, we couldn't get it because the child was 12 years old. She could decide what she wanted to have revealed from Megan Schultz or not revealed. She didn't want anything revealed. Now, we were stymied by that again. Even the guardian ad litem filed a petition for subpoenas. Then that got denied too. We tried, Your Honor, to try to get this information for the court, so that we could have an actual hearing to determine that. What the focus of the case was- the statutory requirement that there be a fighting after hearing of serious endangerment. Well, I guess what Judge Peterson found, which I believe is correct, is that the parties focused on reconciliation counseling. That was attempted several times. One, it was attempted with Dan Agents. I understand that. There was no reason. Yes, they wanted reconciliation counseling, but that reconciliation counseling could have been ongoing during a period of visitation under the previous restrictions. There was no hearing even to determine if that was possible. The farther away we get from the 10-year-old child to now the 14 or 15-year-old child, the less likely that there's going to ever be a relationship, which was never contemplated by any of the previous orders or their agreements when they entered the parenting judgment. Well, Judge, there was an order entered on February 24 of 2020 that put the reconciliation counseling on hold for one year, for up to one year. That's when everything came to a stop. I know, but February of 21 passed and nothing happened. Nobody agreed. Okay, so what happened was, is that in August of 2020, Kidwell filed a motion for a hearing. That matter eventually came before the court, Judge Peterson now. There's been four judges involved in this. Anyway, it was Judge Peterson at that time. He ultimately decided that Kidwell had waived his right to have a hearing because he had agreed to, and it was an agreed order, to put the reconciliation counseling on hold for up to a year. But that order, or that motion also said, or resumption of parenting time was a motion of that nature. And as of December 7th or 17th, parenting time should have, pursuant to those orders, been restored. What happened then, Judge, was that on the 17th of December, the question then was, a guardian ad litem was appointed. Judge Buick ordered the guardian ad litem. For a limited purpose. I'm sorry? For a limited purpose. Yes, for a limited purpose. But then it became a larger purpose for her to look into the whole matter. However, Judge Klein, I think it's Judge Klein there, never said, yeah, you're going to further investigate, but she never actually said that there should not be redemption or resumption of parenting time. So, I mean, we've got half orders all over the place, is one of the problems here. And still no hearing, which is the big problem. And whether it, she could have testified, she could have been called to testify. And if she chose not to testify, the judge could have made a decision that there was no reason to suspend, further suspend visitation. There were lots of things that could have been done. The subpoenas were important, but they weren't the only evidence that could have been presented. And I think that was never considered. I want to ask my colleagues first, if they have any questions, and then I'll give you an opportunity to sum up your position. Justice Jorgensen? What strikes me is there seems to be a disconnect in each court appearance. It's like each time you were in front of the court, we went off on a different tangent. Not to reiterate what Justice Hutchinson has said, but that December 7, 2018 order should have expired a week later. And then on the 13th, we come in on a different motion, but on the 17th, nothing happens. I mean, is there a reason why there was this disconnect and no consistency in the orders tying these events together? And then we're left with, as Justice Mullen said, with this hole where a proper motion was made and the dad never got a hearing on the issue. How do we ignore that? I guess that's my bottom line question. It's a long question, but that's the bottom line. I mean, the motion for a hearing was denied by Judge Peterson, but he offered to the attorney for the father the right to file a motion to reconsider. That was never done. I think the expectation at that time was that reunification counseling would resume, and it was going to happen. What happened then is that Judge Braden, who was now the reunification counselor, sent an email to the parties on January 4th of 2021 saying that she had decided that it would be not in the child's best interest to proceed with the reunification counseling, and she was withdrawing from the process. Now, at that time, I think a motion could have been filed by the defendant, but none was. What was actually done was that a petition for an evaluation by Dr. Finn was filed under 604.10, and so that was what was done, and that was what led to the hearings that we have had, and then Dr. Finn was appointed to do an evaluation, and then we objected to that because Dr. Braden had already said she didn't think it was in the child's best interest, but that was overruled, and so then we asked to have our own expert, and then that went on, and then eventually both experts were involved, and then we had a pretrial with Judge Stephanie Klein, who's now the judge, the fourth judge in the case, and at that time, it was decided that there would be a hearing on the question of whether reunification counseling should go ahead, but the expert for Mr. Kidwell, Dr. Finn, had such a busy schedule that he was not available until into February of the following year, so that's why the hearing didn't start until February of 2023, so my client had nothing to do with that. We were ready to go, but that's what happened, so yes, this thing has been dragged out, but I think to a certain extent or a big extent, a lot of this has to do with what Mr. Kidwell did or didn't do. I mean, his background, his problems with drugs, all of that, his problems, and Judge Klein also found that there was a real question with his credibility. He testified that he pled guilty to a charge that he wasn't guilty to, so then the judge said, well, if that's true, then maybe you're not telling me the truth. I mean, there's all kinds of problems that I think were created by the defendant, or I'm sorry, by the plaintiff, by Mr. Kidwell, and I think the focus should be on the child and not on the dad. I agree, but we never got to hear from the child or any other than Trouble Guardian and LIDA, who felt that counseling should occur and that reunification or parenting time should be the end goal, and we never got there. Well, I think the guardian at LIDA, when she testified at the hearing in front of Judge Klein, said that it was her recommendation that reconciliation counseling start as soon as possible, but she did not say that parenting time should resume. I think everybody agreed that the child was very if you go back and read the record, it says, and that word was used several times, that the child was very fragile and that starting the reconciliation counseling too soon could be a problem, and so that was why Megan Schultz was to prepare the child for the resumption of that counseling, or I shouldn't say resumption for that counseling, but then where that could even start, Judge, Dr. Braden says, I'm not going to go on with being the reunification counselor, so it became very confusing, obviously, but I don't think we should say that the problem really lies with the child or with my client. I think the father is really the one that's caused a lot of these problems. Well, you raised your client's pregnancy, and it would be too difficult for her during, too stressful for her during a pregnancy, so we've got a lot of people who could be blamed, but that's not necessarily what we're here to do. We're trying to figure out what we need to do. Justice Mullen, do you have any other questions? No, thank you. All right, then if you would sum up, please, Mr. Buck, we'll get back to you. I think that the court was right, had a right to deny the motion for reconciliation counseling. She found one of the factors, and I think that was enough, and then she could decide. I disagree that adding that prepositional phrase to that second factor is incorrect, but even if it was, she found the fourth factor to apply, so she had the basis to make a ruling, and I think she made the correct ruling that reunification counseling at this time would not be helpful to the child. Secondly, the issue about the order that was entered on December 7th, Pearl Harbor Day of 2018, was only for 10 days. You pointed that out yourself, Judge Hutchison, and I think that's, in fact, what was true. Now, why something more didn't happen in that time, I don't know. I think the problem was, or not the problem, what everybody was thinking about is we're going to start reconciliation counseling in some manner after the GAL has talked to the child and then determined what should be done, so that's what happened then, all right? Then we have the situation with 2000, the 20, I'm sorry, October 20, 2020 order by Judge Peterson, and I think on that one, the judge was right to say that Mr. Kidwell had waived his right to have a hearing at that time because he had agreed to put reconciliation counseling, which would lead to the resumption of parenting time, but if he wanted to have the matter reconsidered, he could, but no such motion was ever filed, so again, that's where I think the courts have entered correct orders in this matter. Thank you. Thank you. All right, Mr. Truro, if you wish to respond at this time, you may do so. You have to unmute yourself first. There you go. I apologize. My client, from my perspective, you know, I think it's a red herring to put the burden on my client to file a 1203 motion under the Code of Civil Procedure before Judge Peterson, if Judge Peterson certainly simply just denied the motion. I think part of my problem with what happened here was the denial of the motion for reconciliation counseling did occur. I object to that. My client was denied the hearing on the petition to modify his parenting time and take away the supervised parenting time. Essentially, what has happened with the passage of five years is that now, I believe, the trial court created an issue here where the trial court has harmed my client's ability to have a relationship with his child, and after the passage of five years, if my client never has a hearing, the denial of his parenting time, it will be exceedingly difficult for him to ever, if he's denied a hearing on the petition to suspend his parenting time, if it stands now with no reconciliation counseling, it's been five years since he's seen his daughter, it will essentially, if the court's order stands from October 20th of 2020, which denies all parenting time in all contact except as recommended by a reunification therapist who has now been denied, essentially, it will make my client's lack of parenting time non-modifiable. The passage of time. Mr. Chiro, if we were to agree with you and this case was to be remanded, what do you think should happen if it goes back to the trial court or a trial court? Right. Certainly, Justice. I think that the respondent, Apolli's petition to suspend parenting time should be heard in conjunction with my client's motion for reconciliation counseling, which I believe is just a way to request some relief. I believe that they should be heard together by the trial court. All right. You did, and this was brought up by Justice Jorgensen, there seemed to be disconnects at certain hearings. Your trial counsel kept filing motions and other things weren't already done. I guess other issues that had been filed had not been completed, which may or may not have led to confusion in this case. It certainly has for me. But what exactly was the purpose, even though you're not the trial counsel, of filing all of these motions and not just staying with one, just the motion for a hearing, which would be critical in this case? I would only have to guess, Your Honor, and knowledge of how certain, because there were four trial judges in this matter, and when we refer to the court, it went from Judge Buick, Judge Peterson, Judge Voiland, to Judge Klein. As a practitioner in the trial court, and I do practice there, sometimes if you know your audience and you know the trial judge, you could fairly accurately guess what a judge may do in a particular case, and that may have guided my client's trial counsel's decision on how to proceed. What you might file before Judge Buick might be something entirely different than you might file before Judge Peterson, Judge Voiland, who's now retired, and now Judge Klein. I'm least familiar with Judge Klein, but in advising a client, I would clearly give different advice as trial counsel as to how to proceed before Judge Buick versus Judge Peterson, in particular. There is a family case called Matter of the Marriage of Bernay that nobody has cited because it deals with maintenance, but it specifically says that trial courts are required to look at previous orders to determine where this case currently is and make findings consistent with what happened before and try to deal with what's going on at the time. Is there any evidence in this particular record that one or all of those judges look back at previous orders? The only mention I saw in the court's file regarding referencing prior orders was Judge Peterson's comment on October 20th of 2020 that my client had waived his right to a hearing on the respondent at police motion to suspend parenting time, but he did not even specify to which prior orders he was referring, and that's the only time that I can see that any of the trial judges looked at the file in terms of procedurally what happened. I think a lot of the pleadings, they didn't properly mention whether or not they were requesting temporary relief, whether or not they were requesting permanent relief. I think the failure to cite in the preambles for the pleadings created some of the confusion as well. I don't think the attorneys or the court properly tracked what they were doing. Mr. Buck indicated that there was a pretrial or a conference with Judge Klein. Was anything discussed there about her looking at previous orders or trying to figure out where this case was? I could not answer that question for you. All right. Anything else, Justice Mullin or Justice Jorgensen of Mr. Chiro? I have no further questions. Thank you. All right. Thank you. All right. Mr. Chiro, you can... Well, wait. Before you actually sum up, Mr. Buck, you had something to add possibly to my question about prior orders, and I'll let you make that representation now, and then, Mr. Chiro, you can respond. Yes. Judge Buick, when she first made that ruling on December 7th, she had knowledge of the case prior from 2010 to 2018. She knew... Because she was the trial judge. Yeah. And she had heard multiple hearings about problems that had gone on between the parties. Okay. So she knew about that. And then I think Judge Klein, before she started that hearing, she asked both attorneys, what is this all about? Because I see so many motions here. And so she tried to clarify exactly what she was going to be hearing. And then both parties and their attorneys agreed that it was to determine whether reunification counseling should continue. Okay. Thank you, Mr. Buck. All right. Mr. Chiro, if you want to sum up then, this is your opportunity. Certainly, Justice. So regarding the motion for reconciliation counseling filed by my client on December 13th of 2018, he did receive a hearing, but I believe the court's addition of language to the statute indicates she did not understand the burden and the standards that needed to be met. I do not believe my client ever received a hearing on the petition to suspend parenting time filed on October 3rd of 2018, either on a temporary basis or as a final ruling, and that I believe is reversible error. So I would like the case remanded to the trial court to rehear the petition to suspend parenting time... Well, to hear for the first time the petition to suspend parenting time and to rehear the motion for reconciliation counseling. And then it would be up to the trial court as to how to bring that matter to conclusion, set a briefing schedule, whether or not to reappoint the experts, that would all be to the trial court's discretion. All right. Justice Jorgensen, Justice Mullen, any other questions for Mr. Chiro? Nothing. Thank you. Thank you both counsel for your arguments this morning on a very complicated case. Yes. Thank you very much. We do appreciate your time. We've taken additional time because it is some resolution from us or maybe the trial court. We're not there yet, but we will take this matter under advisement and render a decision in due course. At this point, counsel, you are both excused from this hearing. Thank you. Thank you, Justices.